# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

―――――――

No. 16-40106
Summary Calendar

―――――――

United States Court of Appeals
Fifth Circuit

**FILED**

January 13, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

HEESHAM BROUSSARD, also known as Sudan,

Defendant-Appellant

―――――――――――――――

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:13-CR-97-5

―――――――――――――――

Before JONES, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

A jury convicted Defendant-Appellant Heesham Broussard on one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349; two counts of mail fraud, in violation of 18 U.S.C. § 1341; and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. The district court sentenced him to 96 months imprisonment for the mail fraud counts and to a consecutive 24-month sentence for the aggravated-identity-theft counts. It also imposed a

―――――――――――――――

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-40106

three-year term of supervised release and ordered Broussard to pay $13,700 in restitution.

I.

In his first assignment of error, Broussard challenges the district court's denial of his *Batson* claim, arguing that the government's explanations for striking three African-American jurors were pretextual. *Batson v. Kentucky*, 476 U.S. 79 (1986), established a three-step process for evaluating a defendant's claim that a prosecutor used peremptory strikes in a racially discriminatory manner. *United States v. Thompson,* 735 F.3d 291, 296 (5th Cir. 2013). First, the challenger must make a prima facie showing of discriminatory jury selection. *Hernandez v. New York*, 500 U.S. 352, 358 (1991). The burden then shifts to the party accused of discrimination to provide a race-neutral explanation for its strikes. *Id.* at 358-59. The explanation "need not be persuasive, nor even plausible, but only race-neutral and honest." *United States v. Williams*, 264 F.3d 561, 571 (5th Cir. 2001). "Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez*, 500 U.S. at 359. The trial court's factual finding on the ultimate question of discriminatory intent is accorded great deference on appeal and is reviewed for clear error. *Id.* at 364; *Thompson*, 735 F.3d at 296.

Broussard asserts that the government peremptorily struck the three African-Americans who remained in the strike zone, but he fails to establish a discriminatory motive. The government offered valid, facially race-neutral reasons for each of the challenged strikes, and Broussard's contentions that the government's race-neutral explanations were mere pretext are unavailing. The reasons provided by the government were not implausible or fantastic, and the district court made the determination that they were credible after

observing the prosecutor's and the jurors' demeanors. *See Thompson*, 735 F.3d at 296; *Williams*, 264 F.3d at 571. The district court's denial of Broussard's *Batson* challenge was not clear error.

In a related assignment of error, Broussard urges that the government's use of its peremptory strikes against African-American jurors denied him a fair trial. Setting forth demographic statistics of the Tyler Division of the Eastern District of Texas, he explains that the pool of prospective jurors was reflective of the community, but insists that the government eliminated that fair representation by using only half of its peremptory strikes and then explaining those strikes with allegedly race-neutral reasons.

We disagree. The district court considered the percentage of strikes against African-American jurors, given that it served as the basis for establishing a prima facie case of discrimination under the first step of *Batson*. *See Hernandez*, 500 U.S. at 358. To the extent that Broussard urges that the government's race-neutral reasons were implausible based solely on the percentage of strikes against African-American jurors, we previously have rejected such a claim. *See United States v. Pratt*, 728 F.3d 463, 476 (5th Cir. 2013) (abrogated on other grounds by *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1347-48 (2016)).

## II.

In his second assignment of error, Broussard argues that the evidence adduced at trial was insufficient to support his convictions for aggravated identity theft because the government failed to prove, as required by the Supreme Court in *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009), that he knew that the identity of AD belonged to a real person. We review this preserved challenge de novo, *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012), asking whether, "after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The trial evidence showed the following. Broussard, Olumide Lalemi, and others conspired to use the mail and private and commercial interstate carriers to procure and distribute counterfeit money instruments (CMIs). Lalemi bought information from internet hackers that allowed him to obtain the account information and account numbers on compromised Federal Express (FedEx) accounts. After Broussard agreed to participate in Lalemi's internet scam, Broussard, using names, addresses, and FedEx account numbers supplied to him by Lalemi, distributed the CMIs via FedEx to individuals who were instructed to cash the CMIs and send a portion of the proceeds to specific individuals identified by Lalemi. A chain of instant electronic messages that were exchanged by Lalemi and Broussard as early as May 2011 indicate that Broussard was aware that the FedEx packages would only be processed and delivered if the FedEx account information and numbers that the men used was "good" or "kosher." The two packages at issue here, on which Broussard used AD's name, address, and FedEx account number, were not sent until late June 2011.

A rational juror in this case could have inferred from Broussard's statement that the FedEx account numbers and account information had to be good for the packages to be delivered successfully that he understood the scam he was running with Lalemi necessarily involved the use of the names, addresses, and account numbers of real FedEx customers. *See Jackson*, 443 U.S. at 319; *United States v. Kuhrt*, 788 F.3d 403, 413-14 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1376 (2016); *United States v. Stephens*, 571 F.3d 401, 405-07 (5th Cir. 2009). Bolstering this inference are the facts that, (1) when Broussard

No. 16-40106

first agreed to work for Lalemi, he stated that he knew what was going on, and (2) prior to agreeing to participate with Lalemi, Broussard had participated in a similar internet scam in Atlanta. Nothing in the record explicitly states that Broussard knew that AD was a real person, but the evidence was sufficient for a rational juror to draw that inference. *See Flores-Figueroa*, 556 U.S. at 657; *Kuhrt*, 788 F.3d at 413-14; *Stephens*, 571 F.3d at 405-07.

Broussard's assertion that AD testified that she did not know Broussard does not help him, as nothing in § 1028A requires the defendant to personally encounter the person whose identity he is stealing or has stolen. Additionally, Broussard's assertion that the FedEx account number associated with AD's name actually belonged to the company for which she worked rather than to her personally raises the specter of the issue whether § 1028A applies only to the means of identification of a natural person or whether it also applies to the misappropriation or misuse of a business entity's means of identification. We need not, and do not, reach this issue, however, because Broussard is represented by counsel on appeal, and his brief is not entitled to the benefit of liberal construction. *See United States v. Lee*, 648 F. App'x 447, 448 (5th Cir. 2016); *Beasley v. McCotter*, 798 F.2d 116, 118 (5th Cir. 1986).

The judgment of the district court is AFFIRMED.